J-S51045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF:  A.J.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  T.M., MOTHER | |
| | No. 487 EDA 2016 |

Appeal from the Decree January 12, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at Nos.: 51-FN-001446-2014
CP-51-AP-0000522-2015

BEFORE:  GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED SEPTEMBER 01, 2016**

Appellant, T.M. (Mother), appeals from the decree of the Court of Common Pleas of Philadelphia County, entered January 12, 2016, that terminated her parental rights to her son, A.J.M. (Child), born in May of 2011, and changed Child's goal to adoption.  We affirm on the basis of the trial court's opinion.[1]

The trial court aptly summarized the events that led the Philadelphia Department of Human Services (DHS) to file a petition for the involuntary

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] In a separate decree, on the same date, the trial court also granted the petition for the involuntary termination of the parental rights of Child's father.  Only the decree as to Mother is at issue in this appeal.

termination of Mother's parental rights. (**See** Trial Court Opinion, 3/16/16, at unnumbered pages 1-2). We respectfully refer the reader to that opinion for a complete recitation of the facts of this case.

For the convenience of the reader, we note briefly that in February of 2014 Mother left Child, then still two years of age, in the care and custody of his paternal grandmother. (**See id.**). Mother moved into the home of a male friend. Mother has a history of drug and alcohol abuse. She suffers from bi-polar disorder. She also has violent tendencies, a history of domestic violence and transiency.

On August 14, 2015, DHS filed a petition to terminate Mother's parental rights. The trial court held a hearing on the petition on January 12, 2016. The only person to testify at that hearing was DHS caseworker, Jasmin Ellum. The trial court entered its decree terminating Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b) on January 12, 2016.[2]

Mother raises two questions on appeal:

1. Did the [t]rial [c]ourt err when it found that the Department of Human Services by clear and convincing evidence had met its burden to terminate [Mother's] parental rights pursuant to 23 Pa.C.S.A. §2511(a)(1), §2511(a)(2); §2511(a)(5) and §2511(a)(8)[?]

_____

[2] Mother timely filed her notice of appeal and statement of errors complained of on appeal on February 9, 2016. The trial court entered its opinion on March 16, 2016. **See** Pa.R.A.P. 1925.

2. Did the [t]rial [c]ourt err when it found that the termination of [M]other's parental rights was in [C]hild's best interests and that the Department of Human Services had met its burden pursuant to 23 Pa. C.S.A. §2511(b)[?]

(Mother's Brief, at vi).

Our scope and standard of review are well-settled:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further,

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

We also note our standard of review of a change of goal:

When we review a trial court's order to change the placement goal for a dependent child to adoption, our standard is abuse of discretion. In order to conclude that the trial court

- 3 -

abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record.

*In the Interest of S.G.*, 922 A.2d 943, 946 (Pa. Super. 2007) (citation omitted).

Here, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b). In order to affirm the termination of parental rights, this Court need only agree with any one subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).

Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511 (The Adoption Act), which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing,

- 4 -

furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

A party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re T.F.*, 847 A.2d 738, 742 (Pa. Super. 2004) (citation omitted). Furthermore,

A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In the Interest of K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citation omitted).

To terminate parental rights pursuant to section 2511(a)(1), the person or agency seeking termination must demonstrate through clear and convincing evidence that, for a period of at least six months prior to the filing of the petition, the parent's conduct demonstrates a settled purpose to relinquish parental rights or that the parent has refused or failed to perform

parental duties. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003).

With respect to subsection 2511(a)(1), our Supreme Court has held:

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M. II*, 708 A.2d 88, 92 (Pa. 1998) (citation omitted).  Additionally,

the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations omitted).

The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child."  23 Pa.C.S.A. § 2511(b).  The Act does not make specific reference to an evaluation of the bond between parent and child but our case law requires the evaluation of any such bond.  *See In re E.M.*, 620 A.2d 481, 485 (Pa. 1993).  However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation

performed by an expert. ***In re K.K.R.-S***., 958 A.2d 529, 533 (Pa. Super. 2008).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court we conclude that there is no merit to the issues Appellant has raised on appeal. The trial court opinion properly disposes of the questions presented. (***See*** Trial Ct. Op., at 2-5) (concluding that: (1) for a period of six months leading up to the filing of the petition, Mother refused or failed to perform her parental duties; and (2) DHS met its burden by clear and convincing evidence to prove that terminating Mother's parental rights was in the best interest of Child). Accordingly, we affirm on the basis of the trial court's opinion.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/1/2016

IN THE COURT OF COMMON PLEAS

FOR THE COUNTY OF PHILADELPHIA

FAMILY COURT DIVISION

|  |  |  |
|---|---|---|
| IN RE: A.M. | : | CP-51-DP-0001448-2014 |
|  | : | CP-51-AP-0000522-2015 |
|  | : |  |
| APPEAL OF: T.M., Mother | : | 487 EDA 2016 |

## OPINION

**Irvine, J.**

This appeal arises from this Court's order on January 12, 2016 terminating the parental rights of T█████ M█████, mother. Mother's parental rights were terminated pursuant to the petition filed on behalf of the Department of Human Services (DHS) by the City of Philadelphia Solicitor's Office.

Deborah A. Fegan, counsel for mother, filed a timely appeal from the January 12, 2016 order terminating parental rights with attached Concise Statements of Errors, Affidavits of Service, and other related documents necessary to perfect this appeal.

**Factual and Procedural Background**

A summary of the relevant procedural history is set forth as follows:

The child, A.M. was born on May 24, 2011.

In February, 2014, the Mother left the child, A.M. in the care and custody of the paternal grandmother (PGM), B███ R████. The mother began living in the home of a male friend.

On March 26, 2014, PGM petitioned the Domestic Relations Branch of Family Court for primary physical and legal custody.

In May, 2014, the mother began visiting PGM and requesting permission to take the child, A.M., from the home. The PGM did not know where the mother resided.

On June 18, 2014, the mother indicated to DHS that she was going to contact them and disclose her address. DHS needed the address to assess the safety of A.M.'s thirteen month old sibling. However, the mother failed to contact DHS.

On June 19, 2014, the mother visited PGM's home and attempted to remove the child. The mother became extremely hostile and the police were called to the home.

The mother had a history of drug and alcohol abuse. She suffers from bi-polar disorder and has violent tendencies. She was not receiving treatment. The mother has a history of domestic violence and transiency.

On June 19, 2014, DHS obtained an Order of Protective Custody (OPC) for the child. The child remained in the care of the PGM.

A shelter care hearing was held on June 20, 2014 before Master Lynne M. Summers. Master Summers lifted the OPC and ordered the temporary commitment of A.M. to the care and custody of DHS.

On June 27, 2014, an adjudicatory hearing was held before the Honorable Jonathan Q. Irvine. Judge Irvine adjudicated A.M. dependent and committed him to the care and custody of DHS.

The matter was listed on a regular basis before judges of the Philadelphia Court of Common Pleas – Family Court Division – Juvenile Branch pursuant to section 6351 of the Juvenile Act, 42 Pa C.S.A. §6351, and evaluated for the purpose of determining or reviewing the permanency plan of the child.

In subsequent hearings, the DRO's reflect the Court's review and disposition as a result of evidence presented, addressing, and primarily with, the goal of finalizing the permanency plan.

On January 12, 2016, a Termination of Parental Rights hearing for the mother, T.M., was held in this matter. The Court found by clear and convincing evidence that mother's parental rights of A.M. should be terminated pursuant to the Pennsylvania Juvenile Act. Furthermore, the Court held it was in the best interest of the child that the goal be changed to adoption.

The instant timely appeals of the mother follows.

**Discussion:**

The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa. C.S.A. §2511. In the present case, mother's parental rights were terminated based on §2511(a) (1), (2), (5) and (8) and §2511(b).

§2511(a) provides that parental rights may be terminated based on any one of the grounds enumerated therein:

General rule- the rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

In proceedings to involuntary terminate parental rights the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for termination. *In re Adoption of Atencio*, 539 Pa. 161, 650 A.2d 1064 (1994)

Under Pennsylvania law, to satisfy section 2511 (a) (1), the moving party must produce clear and convincing evidence of conduct sustained for at least six months prior to the filing of the termination petition, which reveal a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitation of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A2d 688, 690 (Pa.Super, 2002).

It is clear from the record that for a period of six (6) months leading up to the filing of the Petition for Involuntary Termination, mother failed to perform parental duties for the child. The court found by clear and convincing evidence that mother refused or failed to perform her parental duties.

In the instant case, the mother did not complete her Single Case Plan (SCP) goals. The Community Umbrella Agency (CUA) social worker identified the mother's SCP objectives as: 1) to complete drug and alcohol treatment, 2) to complete parenting classes and 3) to complete mental health treatment. (N.T., 1-12-16, p. 8). The mother did not complete drug and alcohol treatment. Furthermore, the mother did not complete parenting classes. Lastly, the mother did not complete mental health treatment. (N.T., 1-12-16, pgs. 8-9)

A parent has an affirmative obligation to act in his child's best interest. In reference to parental contact, "to be legally significant, the contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship, and must demonstrate a willingness and capacity to undertake the parental role". *In re D.J.S.*, 737 A2d 283,286 (1999) (quoting *In re Adoption of Hamilton*, 379 Pa.Super. 274, 549 A.2d 1291, 1295 (1988)).

In the instant matter, the child, A.M., has been in placement care for approximately eighteen months. The testimony established that the child is in a loving, safe stable home and termination of the mother's parental rights is in the best interest of the child. (N.T., 1-12-16, pgs. 11-12).

Section 2511 (a) (2) requires that "repeated and continued incapacity, abuse neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for her physical or mental well-being and the condition and causes of the incapacity, abuse, neglect or refusal, cannot or will not be remedied by the parent. 23 Pa. C.S.A. §2511 (a) (2).

Courts have further held that the implications of a parent's limited success with services geared to remedy the barriers to effective parenting can also satisfy the requirements of §2511 (a) (2). *In the matter of B.L.W.,* 843 A.2d 380 (Pa. Super. 2004), the Court's grave concerns about Mother's ability to provide the level of protection, security and stability" that her child needed was sufficient to warrant termination. Id. at 388

Termination of parental rights under §2511(a)(2) is not limited to affirmative misconduct but may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.,* 797 A.2d326, 337 (Pa. Super.2002).

In the instant case, the CUA social worker testified that the mother's visits never progressed from supervised visits to to unsupervised visits because she did not complete any of her SCP objectives. (N.T., 1-12-16, p. 9). In November, 2015, the mother's visits with the child were suspended for two weeks because the mother threatened to physically "fight" the receptionist at the agency when the mother saw her. (N.T., 1-12-16, p. 9-10). Furthermore, the social worker testified that the mother stated that she was going to check herself into a mental health facility because she was having suicidal ideations. The mother did not complete mental health treatment. The social worker has no record of completion of mental health treatment since that statement. (N.T., 1-12-16, p. 10). Moreover, the mother had three positive drug screens in June, September and December, 2014. (DHS Exhibit #3) Lastly, the mother did not complete drug and alcohol treatment.

§2511(a) (5) requires that:

> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

§2511(a) (8) states:

> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

In order to terminate the parental rights, the party seeking termination must prove by clear and convincing evidence that the termination is in the best interest of the child. 23 Pa. C.S.A. §2511(b); *In re Bowman,* 436 Pa. Super. 647 A.2d 217 (1994). The best interest of the child is determined after consideration of the needs and welfare of the child. The trial court must examine the individual circumstances of each case and consider all explanations offered by the parent facing

termination of his parental rights to determine if the evidence in light of the totality of the circumstances clearly warrants involuntary termination.

When determining the best interest of a child, many factors are to be analyzed, "such as love, comfort, security and stability. *In re Adoption of T.B.B.*, 787 A.2d 1007, 1013-1014 (Pa. Super. 2003). Another factor that a court is to consider is what, if any bond exists for the child. *In re Involuntary Termination of C.W.S.M. and K.A.L.M.*, 839 A.2d 410,415 (Pa. Super. 2003).

The termination of parental rights is controlled by 23 Pa. C.S.A §2511(a). Under this statute, the trial court must engage in a bifurcated process in which it initially focuses on the conduct of the parent under Section 2511 (a). *In the Interest of B.C.*, 36 A.3d 601 (Pa. Super. 2012). If the trial court determines that the parent's conduct warrants termination under Section 2511 (a), it must then engage in an analysis of the best interest of the child under Section 2511(b). *See id.*

Pursuant to Section 2511 (b), the trial court must take in account whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. *In Re C.S.*, 761 A.2d 1197, 1202 (Pa. Super. 2000).

In the instant matter, the CUA social worker testified that the kinship parent, the PGM, and the child have the primary parent/child relationship. The child looks to the PGM for all of his needs. The PGM provides the child with love, safety, stability and support. The PGM meets the medical, general, developmental and therapeutic needs of the child. (N.T., 1-12-16, p. 11). The social worker testified that the child would not suffer irreparable harm if his mother's rights were terminated and the goal were changed to adoption. Termination of parental rights would be in the best interest of the child. (N.T., 1-12-16, p. 11-12).

The Trial Court found by clear and convincing evidence that the Department of Human Services met their statutory burden pursuant to 23 Pa. C.S.A. § 2511 (a) & (b) (N.T., 1-12-16, p. 15) and that it was in the best interest of the child to change the goal to adoption.

**Conclusion:**

Accordingly, the Trial Court's Decree entered on January 12, 2016 terminating the parental rights of T.M. should properly be affirmed.

By the Court

_____
                                    J.

IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIA
FAMILY COURT DIVISION


IN RE:      A.J.M., Minor          :     No.  487 EDA 2016

:

APPEAL OF: T.M., Mother        :


## PROOF OF SERVICE


      I hereby certify that this court is serving today, Wednesday, March 16, 2016 a copy of the foregoing Opinion, by regular mail, upon the following person(s):


The names and addresses of all persons served are as follows:

Deborah Ann Fegan, Esquire
1800 JFK Blvd – Ste 300
Philadelphia, PA 19103

Marguerite C. Gualtieri, Esquire
Support Center for Child Advocates
1900 Cherry Street
Philadelphia, PA 19103-1405

Lisa Marie Visco, Esquire
1800 JFK Blvd – Ste 300
Philadelphia, PA 19103

Michael B. Joyce, Esquire
City of Philadelphia Law Department
1515 Arch Street – 16th Floor
Philadelphia, PA 19102-1595


BY THE COURT:

_____
HONORABLE JONATHAN Q. IRVINE